**2018 BNH 006**        **Note:  This is an unreported opinion. Refer to LBR 1050-1 regarding citation.**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 17-10796 -BAH
                                                                Chapter 7

Joseph A. Foistner,
          Debtor

Antonia Shelzi,
          Plaintiff

v.                                                              Adv. No. 17-1083-BAH

Joseph A. Foistner,
          Defendant


*James F. Laboe, Esq.*                    *Joseph A. Foistner, Esq.*
*Orr & Reno, P.A.*                        *New Boston, NH*
*Concord, NH*
*Attorney for Antonia Shelzi*


## MEMORANDUM OPINION

## I. INTRODUCTION

The matters before the Court are the "Motion to Dismiss Plaintiffs' [sic] Complaint"[1] (the "Motion to Dismiss") filed by the debtor-defendant Joseph A. Foistner ("Foistner") and the objection thereto[2] filed by the plaintiff Antonia Shelzi ("Shelzi"), as well as Foistner's "Motion

_____

[1] Doc. Nos. 17.

[2] Doc. No. 21.

For Entry of Judgment, Dismissing Plaintiff's Complaint"[3] (the "Motion for Judgment").  Shelzi commenced the present adversary proceeding seeking to except a debt owed to her from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and/or (a)(6).  Through the motions, Foistner seeks to dismiss all counts against him for failure to state a claim.  For the reasons set forth below, the Court will grant the Motion to Dismiss in part, and deny the Motion for Judgment.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## III. FACTS

A. Procedural History

The Debtor filed a voluntary Chapter 7 petition on May 31, 2017.  Shelzi commenced the present adversary proceeding on December 4, 2017.[4]  Foistner filed the Motion to Dismiss on March 29, 2018.  Shelzi filed her objection on May 23, 2018.  According to the certificate of service, the objection was not served on Foistner, who is *pro se* in this adversary proceeding, but mistakenly served on Attorney Petrillo, who represents him in the main case.

On May 30, 2018, the Court conducted a hearing on the Motion to Dismiss, and at its conclusion took the matter under advisement.  The Court further ordered Shelzi to file a

---

[3] Doc. No. 24.

[4] Shelzi prematurely filed her complaint prior to her motion to extend the deadline to do so being heard, and then withdrew the motion under the mistaken belief that it was moot.  Discerning no prejudice to Foistner, the Court permitted Shelzi to retract her withdrawal of the motion, see In re Foistner, No. Bk 17-10796-BAH, 2018 WL 718379, at *3 (Bankr. D.N.H. Feb. 5, 2018), and, after a further hearing, granted the motion and retroactively extended the time for filing her complaint to December 9, 2017.

supplemental response regarding her argument under 11 U.S.C. § 523(a)(4) by June 8, 2018.  On June 1, 2018, Foistner filed the Motion for Judgment, seeking dismissal of the complaint with prejudice on account of Shelzi's apparent failure to properly serve him with her objection to the Motion to Dismiss in accordance with the local rules.  Shelzi filed her "Supplemental Response to Objection to Debtor's Motion to Dismiss Adversary Complaint"[5] ("Shelzi's Supplement") on June 8, 2018.  On June 22, 2018, Foistner filed a supplemental response in support of the Motion to Dismiss ("Foistner's Supplement").[6]

   B. The Motion to Dismiss Standard and the Record Defined

   In Ashcroft v. Iqbal, the Supreme Court of the United States explained the standard for dismissal under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), made applicable in adversary proceedings by Fed. R. Bankr. P. 7012(b):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" . . .
>
> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-570 (2007)) (citations omitted).  The Court need not, however, "accept as true a

---

[5] Doc. No. 26.

[6] Doc. No. 27.

legal conclusion couched as a factual allegation." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555). Put another way, the Court need not "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996).

Although a motion under Rule 12(b)(6) generally tests the sufficiency of the allegations of the complaint, the Court may "augment those facts with facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." <u>Jorge v. Rumsfeld</u>, 404 F.3d 556, 559 (1st Cir. 2005). Indeed, the United States Court of Appeals for the First Circuit has explained that "[w]hen . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." <u>Beddall v. State St. Bank & Tr. Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998). This rule is premised on "the axiom that a writing is the best evidence of its contents." <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 15 (1st Cir. 2003).

In the present case, Shelzi attached twelve exhibits to her complaint, consisting primarily of various pleadings and transcripts from the state court litigation between her and Foistner. Among the documents she expressly seeks to "incorporate by reference" into her adversary complaint is the amended complaint filed against Foistner in the state court.[7] To be clear, however, incorporating a state court complaint would not have the effect of bolstering her adversary complaint with all the additional allegations contained therein. Instead, the state court complaint is merely evidence of what Shelzi alleged in that civil action and can only be viewed to augment

---

[7] <u>See</u> Exhibit H, Doc. No. 1.

the Court's understanding of that proceeding. Factual allegations supporting the relief sought in this adversary proceeding must be contained within the adversary complaint.

Similarly, Foistner attached fourteen exhibits of his own to the Motion to Dismiss to either refute or supplement Shelzi's factual allegations. These exhibits travel far beyond the scope of the adversary complaint and cannot be considered without first converting the Motion to Dismiss to one seeking summary judgment, which would be premature at this stage. Accordingly, the Court will not consider the facts alleged by Foistner in the Motion to Dismiss, nor any of his attached exhibits.

C. <u>The Allegations of the Complaint</u>

On August 30, 2000, Foistner filed a Certificate of Formation with the New Hampshire Secretary of State to create Seff Enterprises & Holdings, LLC ("Seff") for the purpose of developing a twenty lot subdivision in New Boston, New Hampshire known as Waldorf Estates.[8] At all relevant times, Foistner was the manager of Seff, though not a member.[9] Foistner's wife, Laurie, was a 50% member of Seff.

In 2002, Foistner needed financing for Waldorf Estates, and "promised Shelzi lucrative returns if she became a member of Seff."[10] Based on Foistner's promises, Shelzi entered into purchase contract to acquire Louis A. Maynard's 50% interest of in Seff for $250,000.[11] On April 12, 2005, Shelzi, at Foistner's urging, personally guaranteed Seff's $1.8 million loan from Butler

---

[8] Doc. No. 1 at ¶¶ 8, 10-11.

[9] <u>Id.</u> at ¶ 9.

[10] <u>Id.</u> at ¶¶ 11-12.

[11] <u>Id.</u> at ¶¶ 14-15.

Bank.[12]  From December 23, 2002 through August, 2005, Foistner repeatedly requested, in writing and via telephone, that she provide funding for Seff.[13]  As a result of these requests, Shelzi loaned or contributed funds in excess of $1.8 million to Foistner on behalf of Seff.[14]

Although Waldorf Estates received full subdivision approval from the Town of New Boston on December 18, 2002, Foistner had yet to build any houses as of September, 2005.[15]  At that point, Shelzi made multiple demands to Foistner for an accounting of Seff's books and records.[16]  After her demands were denied, on November 7, 2005, Shelzi filed a Verified Petition for An Accounting, Constructive Trust and Other Relief against Foistner, his wife Laurie, and Seff in the Hillsborough County Superior Court.[17]  Foistner filed an answer and counterclaim on January 5, 2006.[18]  To avoid a pre-judgment attachment, Foistner entered into a stipulated order in which he and his wife agreed to pay half of the monthly payment obligation to Butler Bank.[19]

Between April 10, 2006 and November 27, 2006, Foistner "clandestinely" recorded mortgages in favor of SSDD Resolution Trust Holdings, LLC secured by Seff's property at Waldorf Estates totaling $3,711,659.00.[20]  According to the New Hampshire Secretary of State records, SSDD Resolution Trust Holdings, LLC was a New Hampshire limited liability company controlled by Foistner.[21]

---

[12] Id. at ¶ 16.

[13] Id. at ¶ 17.

[14] Id. at ¶ 18.

[15] Id. at ¶¶ 13, 19.

[16] Id. at ¶ 20.

[17] Id. at ¶¶ 20-21.

[18] Id. at ¶ 23.

[19] Id. at ¶ 22.

[20] Id. at ¶ 24.

[21] Id. at ¶ 25.

Through discovery, Shelzi determined that Foistner had been freely depleting the funds of Seff, including those that she contributed, for his own personal benefit.[22]  At an evidentiary hearing held in the Superior Court on June 25, 2007, Foistner admitted that he used Seff's account as his personal bank account.[23]  At a subsequent evidentiary hearing, Foistner also admitted to purchasing three Harley-Davidson motorcycles and installing an in-ground pool at his residence with funds from Seff's account.[24]  Foistner also used Seff funds to pay his personal mortgage, multiple motor vehicles payments, dining out expenses, and personal clothing expenses.[25]  Had Shelzi known that Foistner was using Seff's bank account as his personal bank account, she would not have agreed to loan or contribute any money or agreed to become a personal guarantor on the Butler Bank loan.[26]

On January 31, 2007, Shelzi amended her verified petition to include counts for fraud, conversion, fraudulent transfers, imposition of a constructive trust, and breach of fiduciary duties.[27]  On February 1, 2007, Foistner initiated a separate civil action against Shelzi alleging, *inter alia*, breach of contract and tortious interference with business relations.[28]  On May 2, 2007, Shelzi filed counterclaims for usurpation of corporate opportunity, conversion, and unjust enrichment.[29]  Ultimately, the 2005 and 2007 civil actions were consolidated before the Cheshire County Superior Court.[30]

---

[22] Id. at ¶ 26.

[23] Id.

[24] Id. at ¶ 27.

[25] Id. at ¶ 28.

[26] Id. at ¶ 59.

[27] Id. at ¶ 29.

[28] Id. at ¶ 30.

[29] Id. at ¶ 31.

[30] Id. at ¶ 32.

In order to preserve Seff's only asset pending Shelzi's request for a pre-judgment attachment, the Superior Court entered an order dated February 21, 2007, providing, in relevant part, that "[p]ending further order, there shall be no further transfers, sales or encumbrances of the subject property owned by the Respondents [sic], Seff Enterprises and Holdings, LLC."[31]  On August 12, 2008, Foistner filed an emergency motion seeking relief from the restraining order, asserting that he had a pending sale of Lot 8-84-36 ("Lot 36") in the amount of $200,000.[32]  Shelzi was concerned that Foistner would use the sale of Lot 36 to exercise further self-dealing, such as paying "illegal encumbrances" granted to SSDD Resolution Trust Holdings, LLC.[33]  The Superior Court authorized the sale of Lot 36, but ordered that all proceeds shall be placed in an escrow account pending further court approval.[34]

Contrary to the Superior Court's order, Foistner did not place the sale proceeds in escrow, but instead used them to satisfy the encumbrances he had unilaterally placed on the property.[35]  Additionally, unbeknownst to Shelzi, Lot 36 was sold to "Joseph A. Foistner, Trustee of Red River Realty Trust" on September 22, 2008.[36]  Foistner is the sole beneficiary of the Red River Realty Trust while he is alive and has the power terminate the trust at any time.[37]  As such, Shelzi contends that Foistner committed a fraud by concealing the fact that he was transferring a Seff asset to

---

[31] Id. at ¶ 33.

[32] Id. at ¶ 35.  Curiously, the motion did not disclose the prospective purchaser.

[33] Id. at ¶ 36.

[34] Id. at ¶ 37.

[35] Id. at ¶ 43-45.  A motion for contempt remains pending.

[36] Id. at ¶ 38.

[37] Id. at ¶ 39; see also Exhibit L, Doc. No. 1.

himself from both Shelzi and the Superior Court.[38]  She further asserts that this amounted to another conversion of Seff property and breach of fiduciary duty.[39]

Sometime between 2009 and 2010, Foistner built a house on Lot 36, now known as 104 Foxberry Drive, where he and his wife resided.[40]  On December 13, 2012, the Red River Realty Trust transferred 104 Foxberry Drive to Foistner.[41]   On the same date, Foistner personally borrowed $1,311,000 from Wells Fargo Bank, N.A. secured by 104 Foxberry Drive.[42]  Then, again on December 13, 2012, Foistner transferred 104 Foxberry Drive back to Red River Realty Trust.[43]

On July 17, 2013, Red River Realty Trust opened a home equity line of credit with Sovereign Bank in the amount of $950,000 secured by a mortgage.[44]  On March 2, 2015, Foistner, as trustee of Red River Realty Trust, transferred 104 Foxberry Drive to Ray Atkinson as trustee of API Realty Holdings Trust.[45]  On November 24, 2015, Foistner, as trustee of API Realty Holdings Trust, transferred 104 Foxberry Drive to himself in his individual capacity.[46]  On November 30, 2015, North American Savings Bank recorded a mortgage on 104 Foxberry Drive securing a loan to Foistner in the amount of $2,900,000.[47]

In sum, Shelzi contends by convincing the Superior Court that a sale of Lot 36 for $200,000 was in the best interests of both parties, Foistner was able to transfer a valuable asset to himself,

---

[38] Id. at ¶¶ 40-41.

[39] Id. at ¶ 42.

[40] Id. at ¶ 46.

[41] Id. at ¶ 47.

[42] Id. at ¶ 48.

[43] Id. at ¶ 49.

[44] Id. at ¶ 50.

[45] Id. at ¶ 51.

[46] Id. at ¶ 52.

[47] Id. at ¶ 53.

pay off illegal encumbrances, and encumber the property in the amount of $5,161,000.[48] Additionally, she asserts that Foistner's transfers constitute a "shell game" that would qualify as actually fraudulent transfers as against Shelzi.[49]

In August, 2008, Foistner stopped paying his portion of the Butler Bank obligation, in violation of the stipulated order.[50] Shelzi continued to pay her portion until December, 2008. Ultimately, Butler Bank sued Shelzi in a deficiency action, which she settled by paying $150,000.[51]

Shelzi asserts four counts in her adversary complaint. Through Count I, pursuant to 11 U.S.C. § 523(a)(2)(A), she asserts that the funds she provided to Seff were obtained by false pretenses, false representations, and/or actual fraud. In Count II, brought under 11 U.S.C. § 523(a)(2)(B), Shelzi alleges that the funds were obtained from her in part by the use of "statements in writing that were materially false," and that Foistner published the materially false written statements of financial condition for the purpose of deceiving Shelzi and inducing her to provide funds.[52] In Count III, Shelzi alleges that her debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as arising from Foistner's breach of his fiduciary duty to her.[53] Specifically, she contends that Foistner, as manager of Seff, was acting in a fiduciary capacity with respect to the members of Seff, was entrusted with Seff's assets, and fraudulently misappropriated them.[54] Shelzi further alleges that Foistner committed fraud by inducing Shelzi to contribute funds in

---

[48] Id. at ¶ 54.

[49] Id. at ¶ 55.

[50] Id. at ¶¶ 56-57.

[51] Id. at ¶ 58.

[52] Id. at ¶¶ 63-67.

[53] Id. at ¶ 70 on p. 14. This paragraph is numbered 70, but is numerically paragraph 79. Shelzi does not expressly allege that the debt would be nondischargeable under 11 U.S.C. § 523(a)(4) as arising from larceny or embezzlement.

[54] Id. at ¶¶ 70-74.

excess of $1.8 million to Seff while using Seff's bank account for his personal expenses.[55]  Finally, in support of Count IV brought pursuant to 11 U.S.C. § 523(a)(6), she argues that Foistner committed the wrongful and intentional acts she described without just cause or excuse, and "with the specific intent to cause injury to Shelzi or believ[ing] that injury was substantially certain to occur as a result of his actions."[56]

## IV. POSITIONS OF THE PARTIES

### A. Foistner

Through the Motion to Dismiss, Foistner argues that each count of Shelzi's complaint fails to state a claim upon which relief can be granted.[57]  With respect to Count I, he asserts that Shelzi has not pled the alleged fraud with sufficient particularity.  Specifically, Foistner contends that the complaint does not state the exact nature of the alleged representations and is vague about when they are alleged to have occurred, making it impossible for him to respond.  He further argues that Shelzi has failed to plead intent to deceive, reliance, or any injury she suffered as a proximate result of any alleged misrepresentations.  Foistner also suggests that Shelzi's fraud claims may be time-barred because, assuming the fraud took place in 2002, she did not plead facts showing that she could not with reasonable diligence have discovered the alleged fraud within the three year statute of limitations.

With respect to Count II, Foistner asserts that the complaint contains nothing more than a naked recitation of the elements of 11 U.S.C. § 523(a)(2)(B) completely devoid of factual

---

[55] Id. at ¶ 75.

[56] Id. at ¶¶ 72-77 on p. 14.

[57] As previously noted, Foistner also challenges the accuracy of many of Shelzi's allegations, but the Court will not consider these contentions on a Motion to Dismiss under Rule 12(b)(6).

enhancement.  As such, he argues that Count II fails to satisfy the Twombly plausibility standard and must be dismissed.

Foistner contends Count III must be dismissed because the complaint does not allege a sufficient basis for the assertion that Foistner was acting in a fiduciary capacity towards Shelzi as required by 11 U.S.C. § 523(a)(4).  He argues that the complaint fails to allege the existence of any trust-like relationship between the two, instead simply relying on the unsupported notion that Foistner, as manager of Seff, owed fiduciary duties to Seff's members.  Foistner notes that no New Hampshire statute or common law imposes trust-like duties on the manager of a limited liability company and, as a result, Shelzi cannot possibly satisfy the strict federal definition of "fiduciary capacity."  Foistner also denies that he was either Shelzi's attorney or accountant to the extent that she now tries to base a fiduciary relationship on such an argument.

Finally, with respect to Count IV, Foistner argues that Shelzi's claim under 11 U.S.C. § 523(a)(6) is devoid of any allegation that Foistner intended to cause Shelzi an injury, let alone that she suffered one at all.  Similarly, he asserts that the allegations of malice are simply conclusory recitations that do not satisfy Twombly.  Accordingly, Foistner contends Count IV must be dismissed.

Through the Motion for Judgment, Foistner asserts that a judgment of dismissal of Shelzi's entire complaint is warranted because she failed to serve him with her objection to the Motion to Dismiss within seven days prior to the scheduled hearing as required by LBR 7102.


B. Shelzi

Shelzi opposes the Motion to Dismiss, arguing that she has more than satisfied her burden to plead her allegations with specificity.  Generally, with respect to Counts I and II, she has

emphasizes that she has expressly alleged: (1) that Foistner promised her lucrative returns if she became a member of Seff; (2) that Foistner requested and received financial contributions from her for Seff; (3) that unbeknownst to her, Foistner was using Seff's funds for his own personal expenses; (4) that had she known that Foistner was using Seff's funds for personal purposes, she would not have contributed any or become a guarantor on the Butler Bank loan; (5) that Foistner made false representations to both her and the Super Court in order to transfer Lot 36 to himself; and (6) that she was harmed by Foistner's misrepresentations and misappropriations.  Similarly, Shelzi denies that her fraud claims are time-barred because she is not asserting a new claim for fraud, but merely seeking a determination that her timely filed claims pending in the Superior Court are nondischargeable.

With respect to Count III, Shelzi contends that whether Foistner was acting in a fiduciary capacity for purposes of 11 U.S.C. § 523(a)(4) is a fact intensive inquiry and, given the procedural context, all reasonable inferences must be drawn in her favor.  She asserts that because Foistner managed all the financial activities of Seff, his exercise of control over her funds created a confidential and fiduciary relationship with her.  Citing her amended complaint filed in the Superior Court, she also argues that Foistner held himself out as an accountant and attorney for Seff.  Moreover, relying on N.H. RSA § 304-C:26, II(b) (2007), Shelzi argues that every manager is an agent of the limited liability company for the purpose of its business affairs.  She further notes that the current text of N.H. RSA § 304-C:110 imposes on all managers a duty of loyalty to the limited liability company.  Additionally, Shelzi asserts that N.H. RSA § 304-C:31, V(b) (2007), imposes express trust-like responsibilities on all limited liability company managers to hold in trust all unreasonable benefits derived without the consent or ratification of more than half of the disinterested managers.

13

Although Shelzi acknowledges that the New Hampshire limited liability company statute follows the partnership model, she argues that Judge Yacos' decision in BAMCO 18 v. Reeves (In re Reeves), 124 B.R. 5 (Bankr. D.N.H. 1990), is distinguishable from the present case due, in part, to her contention that Foistner held himself out as the accountant and attorney for Seff. Alternatively, she relies on cases from Massachusetts for the proposition that a qualifying fiduciary relationship can be established by the existence of a contract and the substantial ascendancy of one shareholder over another.  See Abramov v. Movshovich (In re Movshovich), 521 B.R. 42, 64 (Bankr. D. Mass. 2014); D'Anello v. D'Anello (In re D'Anello ), 477 B.R. 13, 26 (Bankr. D. Mass. 2012); Farley v. Romano (In re Romano), 353 B.R. 738, 762–63 (Bankr. D. Mass. 2006).


## V. DISCUSSION

From the outset, the Court notes that "[t]he statutory requirements for a discharge are 'construed liberally in favor of the debtor' and '[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural.'"  Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997) (quoting Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987)).  A creditor must demonstrate by a preponderance of the evidence, see Grogan v. Garner, 498 U.S. 279, 291 (1991), that its "claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)."  Palmacci, 121 F.3d at 786 (quoting Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 9 (1st Cir. 1994)).


### A. Section 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code exempts from discharge any debt "for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained

by—false pretenses, a false representation, or actual fraud. . . ."  11 U.S.C. § 523(a)(2)(A).  To establish that a debt is nondischargeable under this subsection, a creditor must show that:

> 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.

McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001) (citing Palmacci, 121 F.3d at 786) (footnote omitted); see Levasseur v. Old Republic Nat'l Title Ins. Co. (In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013); Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 66 (1st Cir. 2012).

In addition to an express misrepresentation, "[a] false pretense or misrepresentation can be created 'when the circumstances imply a particular set of facts, and one party knows the facts to be otherwise,' and where the silent party 'may have a duty to correct what would otherwise be a false impression.'"  In re Levasseur, 737 F.3d at 818 (quoting Merch. Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999).  "If the disclosure is needed to avert the creation of a false pretense, a known misunderstanding, the disclosure becomes obligatory."  Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 482 B.R. 15, 29 (Bankr. D. Mass. 2012), aff'd, 737 F.3d 814 (1st Cir. 2013).  Moreover, the requirement of fraudulent intent requires the false pretense to be "deliberately fostered and not merely the result of inadvertence."  Id.  Indeed, the requirement of "intent to deceive, manipulate, or defraud," may be met by establishing that the debtor knows or believes the representation is false, or that the representation was made recklessly.  Palmacci, 121 F.3d at 787.  Fraud may be inferred as a matter of fact from the totality of the circumstances.  Id. at 789.

The Supreme Court of the United States has held that 11 U.S.C. § 523(a)(2)(A) requires only justifiable reliance—a lower standard than reasonableness.  Field v. Mans, 516 U.S. 59, 70

(1995). Under the justifiable reliance standard, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" Id. (quoting Restatement (Second) of Torts § 540).

Upon a review of the complaint, the Court finds that Shelzi has stated plausible claims under 11 U.S.C. § 523(a)(2)(A). Although Foistner argues that she has not pled her fraud claims with sufficient particularity, his objection misses the point. Shelzi has alleged that all funds contributed to Seff at his request were fraudulently obtained because Foistner either actually intended to convert them to his personal use, or he otherwise failed to disclose the reason Seff needed money is because he was using its funds for his personal expenses. As Foistner was the manager of Seff, her reliance on his word in the absence of an accounting was justifiable. Shelzi further alleged that had she known Foistner was using Seff's account as his own, she would never have contributed any funds, nor personally guaranteed the Butler Bank mortgage.

Additionally, the Court finds that Shelzi has stated a plausible claim under 11 U.S.C. § 523(a)(2)(A) based upon his alleged fraudulent concealment of his purchase of Lot 36 from both Shelzi and the Superior Court. The allegations indicate that Foistner convinced the Superior Court to relieve him of the order barring the sale of Seff property by claiming that failure to do so would result in the loss of the only prospective purchaser without disclosing that he controlled that purchaser. By allegedly securing approval of the sale through a fraud upon the Superior Court, Foistner was then able to divert the sales proceeds to "illegal encumbrances" rather than the court ordered escrow. To the extent that the sale proceeds were not placed in escrow as ordered, Shelzi has alleged resulting injury.

For these reasons, the Court will deny the Motion to Dismiss with respect to Count I.

B. <u>Section 523(a)(2)(B)</u>

Section 523(a)(2)(B) of the Bankruptcy Code excepts from discharge any debt:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

* * *

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2)(B).  To establish a debt is nondischargeable under this section, a creditor must prove:

(1) the debtor made a statement in writing; (2) the statement concerned the debtor's or an insider's financial condition; (3) the statement was materially false; (4) the creditor actually and reasonably relied on this false statement; and (5) the debtor made the false statement with the intent to deceive the creditor.

Douglas v. Kosinski (In re Kosinski), 424 B.R. 599, 608 (B.A.P. 1st Cir. 2010).  In <u>Lamar, Archer & Cofrin, LLP v. Appling</u>, 138 S. Ct. 1752, 1761 (2018), the Supreme Court held that a statement "respecting the debtor's . . . financial condition" is one that "has a direct relation to or impact on the debtor's overall financial status."

In the present case, Shelzi has done little more than parrot the elements of 11 U.S.C. § 523(a)(2)(B) in her complaint without any specific factual allegations.  For example, she alleges that the Foistner obtained funds from her in part by use of materially false statements of financial condition that he published, but she does not identify what those statements were or how they were false.  This is precisely the type of "[t]hreadbare recitals of the elements of a cause of action" that

17

the Supreme Court has said does not satisfy the <u>Twombly</u> standard of plausibility.  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  As such, the Court finds that Shelzi has not stated a plausible claim for nondischargeability under 11 U.S.C. § 523(a)(2)(B) and, as a result, will dismiss Count II of the complaint.


      C. <u>Section 523(a)(4)</u>

      Section 523(a)(4) of the Bankruptcy Code exempts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4). To establish a claim for fraud or defalcation while acting in a fiduciary capacity, a creditor must prove three elements:

> "First, the debt must result from a fiduciary's defalcation under an 'express or technical trust' . . . Second, the debtor must have acted in a fiduciary capacity with respect to the trust. . . . Third, the transaction in question must be a 'defalcation' within the meaning of bankruptcy law." <u>Chao v. Duncan (In re Duncan)</u>, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005) (citations omitted).

<u>Raso v. Fahey (In re Fahey)</u>, 482 B.R. 678, 687 (B.A.P. 1st Cir. 2012).  The fiduciary relationship necessary to except a debt from discharge under this subsection is determined by federal law and requires the existence of an express or technical trust.  See <u>FNFS, Ltd. v. Harwood (In re Harwood)</u>, 637 F.3d 615, 620 (5th Cir. 2011); <u>Follett Higher Educ. Group, Inc. v. Berman (In re Berman)</u>, 629 F.3d 761, 767 (7th Cir. 2011); <u>Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)</u>, 565 F.3d 963, 968 (6th Cir. 2009).  State law definitions, which include relationships "involving trust, confidence, and good faith, are inadequate."  See <u>Petrucelli v. D'Abrosca (In re D'Abrosca)</u>, No. ADV 09-01070-ANV, 2011 WL 4592338, at *5 (B.A.P. 1st Cir. Aug. 10, 2011); <u>In re Reeves</u>, 124 B.R. at 9.[58]

---

[58] In <u>In re Reeves</u>, Judge Yacos concluded that a limited partner was not acting in a fiduciary capacity, as that term is used under 11 U.S.C. § 523(a)(4), with respect to another limited partner, reasoning that the plaintiff relied on

"'The usual elements of an express trust have traditionally included an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust relationship.'"  In re Fahey, 482 B.R. at 687-88 (quoting Gehlhausen v. Olinger (In re Olinger), 160 B.R. 1004, 1014 (Bankr. S.D. Ind. 1993)).  "A technical trust, on the other hand, 'arises under statute or common law.'"  Id. at 688 (citing In re D'Abrosca, 2011 WL 4592338, at *5); see Ducey v. Doherty (In re Ducey), 160 B.R. 465, 473 (Bankr. D.N.H. 1993) (concluding that a technical trust could arise where a New Hampshire Supreme Court Rule imposes trust-like responsibilities on certain relationships and the parties, charged with constructive notice of those responsibilities, intentionally form those relationships).  A technical trust arising from a statute must define the trust res, spell out the trustee's fiduciary duties, and impose the trust prior to and without reference to the wrong that created the debt.  In re Fahey, 482 B.R. at 688; Collenge v. Runge (In re Runge), 226 B.R. 298, 305 (Bankr. D.N.H. 1998); Stowe v. Bologna (In re Bologna), 206 B.R. 628, 632 (Bankr. D. Mass. 1997).

In her complaint, Shelzi alleges that "[a]s manager of Seff, Foistner was acting in a fiduciary capacity to Shelzi as a 50% member."[59]  In her objection and in the Shelzi Supplement, she further contends that Foistner was acting as a fiduciary to her because he held himself out as her attorney and accountant.[60]  That is not alleged in the complaint, and cannot be fairly incorporated by reference to her state court allegations.  As such, the question before the Court is whether Foistner's status as the manager of Seff placed him in a fiduciary capacity vis-à-vis Shelzi.

---

general fiduciary duties imposed by state law, rather than express trust-like responsibilities with respect to a defined res.

[59] Doc. No. 1 at ¶ 70.

[60] See Doc. No. 21 at 9; Doc No. 26 at 2-3.

A technical trust requires a defined res and defined fiduciary duties.  In re Fahey, 482 B.R. at 688.  The fact that N.H. RSA § 304-C:26, II(b), as was then in effect, provided that "[e]very manager is an agent of the limited liability company for the purpose of its business or affairs" does not satisfy that standard.[61]  Shelzi's citation of the former version of N.H. RSA § 304-C:31, V(b) is also of no avail.  That section provided in relevant part:

> Every member and manager must account to the limited liability company and hold as trustee for it any unfair or unreasonable profit or benefit derived by that person without the consent or ratification of more than ½ by number of the disinterested managers and members or other persons participating in the management of the business or affairs of the limited liability company . . . .

N.H. RSA § 304-C:31, V(b) (2007).  Although clearly imposing trust-like responsibilities with respect to a defined res, this statute runs afoul of the third element of a technical trust—*that the trust be imposed prior to and without reference to the wrong that created the debt*.  In re Fahey, 482 B.R. at 688.[62]

Alternatively, Shelzi relies on a line of cases from the District of Massachusetts which suggest that "a fiduciary relationship for purposes of § 523(a)(4) 'could be established by the existence of a contract and substantial ascendancy of one shareholder over another as an alternative to an express or technical trust.'"  In re Movshovich, 521 B.R. at 64; see In re D'Anello, 477 B.R. at 26; In re Romano, 353 B.R. at 762–63.  Under this theory, the existence of a contract is necessary to the fiduciary relationship, but the source of the fiduciary relationship is the substantial ascendancy of the debtor over the other shareholders.  In re Frain, 230 F.3d 1014, 1018 (7th Cir. 2000).  The substantial ascendancy is created by a *structural* difference in knowledge or power

---

[61] As it was not in effect during the operative time period, the Court offers no opinion as to whether N.H. RSA § 304-C:110 imposes trust-like responsibilities on managers of limited liability companies.

[62] The Court further notes that the statute requires the unreasonable benefit be held in trust for the limited liability company, not the individual members.

between the fiduciary and the principal contained within the operative agreements between the parties.  Id. at 1017.  Superior knowledge of day-to-day operations is insufficient in itself to establish a position of ascendancy.  Id.; In re Romano, 353 B.R. at 762; Baker v. Friedman (In re Friedman), 298 B.R. 487, 497 (Bankr. D. Mass. 2003).

Assuming, *arguendo*, that a qualifying fiduciary capacity could be established by such a showing, two problems remain.  First, Foistner is a manager of Seff, but not a member.  Second, and more importantly, Shelzi has failed to allege the existence, let alone the details, of any contract or operating agreement outlining Foistner's duties and powers.  Accordingly, she cannot establish that they granted Foistner more "knowledge or power" as manager of Seff such that he held a position of ascendancy over Seff's members.  See In re D'Anello, 477 B.R. at 26 (finding that the operating agreement of the limited liability company was not structured in such a way as to concentrate overwhelming power in the debtor's hands); In re Romano, 353 B.R. at 764 (finding that the various agreements between the two shareholders of a closely held corporation did not grant the debtor more "knowledge or power" than the other, and that the debtor did not hold a position of ascendancy).  Moreover, Foistner's allegedly superior knowledge of the day-to-day operations of Seff cannot be said to have created a position of ascendancy over Shelzi if she simply failed to exercise whatever powers she held as a member to reign him in.  See In re Romano, 353 B.R. at 764 (finding that as controller of the closely held corporation, the plaintiff had a duty to exert his authority to obtain appropriate controls over the corporate bank accounts).

For all these reasons, Shelzi has not stated a claim for fraud or defalcation while acting in a fiduciary capacity, and Count III must be dismissed.[63]

---

[63] As previously noted, Shelzi does not expressly allege that the debt would be nondischargeable under 11 U.S.C. § 523(a)(4) as arising from larceny or embezzlement.  The Court presumes that she has not raised these theories because the allegedly converted funds were property of Seff, not Shelzi.

D. Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  "To except a debt from discharge under § 523(a)(6), a creditor must show: (1) the debtor injured him or his property; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious."  Gray v. Tacason (In re Tacason), 537 B.R. 41, 49 (B.A.P. 1st Cir. 2015).  The malice element requires a showing that the injury resulted from an act undertaken "without just cause or excuse."  Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997).  In Kawaauhau v. Geiger, the Supreme Court of the United States unanimously held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  523 U.S. 57, 64 (1998).  Thus, consistent with the Supreme Court's reference to the Restatement (Second) of Torts (the "Restatement"),[64] the willfulness element is understood to require an intent to injure or at least an intent to do an act which the debtor subjectively knows is "substantially certain to cause injury."  B.B. v. Bradley (In re Bradley), 466 B.R. 582, 587 (B.A.P. 1st Cir. 2012) (quoting Hermosilla v. Hermosilla (In re Hermosilla), 430 B.R. 13, 22 (Bankr. D. Mass. 2010)); see also Gordon v. Bradley (In re Bradley), No. 10-16021-WCH, 2014 WL 2612482, at *6 (Bankr. D. Mass. June 11, 2014) (concluding that a purely objective, rather than a subjective, substantial certainty analysis would result in the recklessness standard rejected by Geiger).  Therefore, as explained by the United States Bankruptcy Appellate Panel for the First Circuit:

---

[64] Restatement (Second) of Torts § 8A ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.").

> Stitching these definitional threads together leads to a four-part test for determining nondischargeability under § 523(a)(6): (1) the creditor suffered an injury; (2) the injury was the result of the debtor's actions; (3) the debtor intended to cause the injury or there was a substantial certainty the injury would result from the debtor's act; and (4) the debtor had no just cause or excuse for the action resulting in injury.

In re Tacason, 537 B.R. at 49 (citing In re Hermosilla, 430 B.R. at 22; Bauer v. Colokathis, 417 B.R. 150, 157–58 (Bankr. D. Mass. 2009)); see Iudice v. Murphy (In re Murphy), No. AP 17-1055-BAH, 2018 WL 1508729, at *5 (Bankr. D.N.H. Mar. 26, 2018); Kirk v. Burrows (In re Burrows), No. AP 15-1010-BAH, 2017 WL 455387, at *7 (Bankr. D.N.H. Feb. 2, 2017).

Count IV of the complaint incorporates all of Shelzi's prior allegations by reference, and then alleges in a conclusory manner that Foistner's "acts" were wrongful, intentional, and done with the specific intent to cause her injury or with the belief that injury was substantially certain to result.[65] Unlike her other counts, there is no specific identification of the acts to which she refers. Therefore, to assess the plausibility of Count IV, the Court must first consider what acts Foistner is alleged to have committed. Upon a review of the complaint, the Court discerns two categories: (1) Foistner's alleged fraud; and (2) Foistner's alleged misappropriation of funds.

In the first instance, the Court notes that it has already found that Shelzi has pled a plausible claim for nondischargeability for fraud under 11 U.S.C. § 523(a)(2)(A). Ultimately, relying on the same facts would be worse than redundant because she would first have to establish all the elements of 11 U.S.C. § 523(a)(2)(A), and then show that Foistner committed the fraud with the specific intent to injure her. That means Shelzi would have to prevail on Count I in order to establish most of the elements of Count IV under this theory. Of course, if Shelzi prevailed on Count I, the debt attributable to fraud would be nondischargeable and she would not need to prevail on Count IV on the same facts. Accordingly, in the interests of judicial economy and with no

---

[65] Doc. No. 1 at ¶¶ 71-74 on p.14.

prejudice to Shelzi, the Court will not allow her to proceed under Count IV on the same allegations of fraud that are encompassed by Count I.

Shelzi's misappropriation theory fares better. On its face, there appears to be a disjoint between her allegation that Foistner used *Seff's bank account* for his personal expenses and her subsequent allegation that Foistner misappropriated *her funds*. Nevertheless, drawing all reasonable inferences in Shelzi's favor, it is plausible that a misappropriation of Seff's funds would ultimately injure the members of Seff, including Shelzi.[66] Essentially, the claim is that Foistner fraudulently converted Seff's funds with the intent to injure her or with knowledge that an injury would be substantially certain to occur. The Court finds such allegations sufficiently fulsome and plausible to survive a motion under Rule 12(b)(6).

Accordingly, the Motion to Dismiss will be denied with respect to Count IV.


### E. The Motion for Judgment

Through the Motion for Judgment, Foistner seeks dismissal of Shelzi's complaint with prejudice on the basis that she failed to serve her objection to the Motion to Dismiss on him within the time period set forth in LBR 7102. In relevant part, that rule provides that "[a]ny objection or response to a motion . . . must be filed no later than no later than seven (7) days prior to the date of the hearing." LBR 7102(c)(1). Notably, LBR 7102 refers to the time to *file* an objection, not *serve* one. Here, there is no question that the objection was timely filed on May 23, 2018, seven days prior to the May 30, 2018 hearing on the Motion to Dismiss.

---

[66] Foistner has not disputed Shelzi's standing to bring such a claim individually, rather than derivatively, so the Court need not decide the issue today.

That said, it is apparent from the certificate of service attached to Shelzi's objection that Foistner, who is neither represented by counsel in this adversary proceeding nor himself an electronic filer, was not served by Shelzi at all.  This mistake must be rectified going forward. Notwithstanding this error, the Court recognizes that Foistner obtained a copy of the objection from his bankruptcy counsel sufficiently in advance of the hearing to be able to competently prosecute his Motion to Dismiss.  At best, this issue may have been grounds for a continuance or an opportunity to file a further response.  He did not request the former, and did receive the latter. In any event, dismissal of the complaint with prejudice is an excessive and unwarranted remedy under the circumstances.  Therefore, the Motion for Judgment will be denied.

## VI. CONCLUSION

For the reasons articulated above, the Court will enter a separate order granting the Motion to Dismiss in part with respect to Counts II and III, and denying it in part with respect to Counts I and IV, as well as denying the Motion for Judgment.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

ENTERED at Concord, New Hampshire.

Dated: July 20, 2018                          /s/ Bruce A. Harwood
                                              Bruce A. Harwood
                                              Chief Bankruptcy Judge

25